IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CIMAREX ENERGY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-525 |
| | ) | |
| SCOTT W. CALHOON, M.D., | ) | (Consolidated with |
| | ) | Case No. CIV-11-725-D) |
| Defendant/Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QEP ENERGY COMPANY, | ) | |
| | ) | |
| Additional Counterclaim Defendant. | ) | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Claims of Bad Faith and Punitive Damages [Doc. 13], filed in Case No. CIV-11-725-D pursuant to Fed. R. Civ. P. 12(b)(6). Scott W. Calhoon, Cimarex Energy Co., and QEP Energy Co. are each parties to an August 20, 1975 oil and gas lease (the "Lease"). Calhoon is a successor lessor and royalty owner; Cimarex Energy Co. and QEP Energy Co. are successor lessees.

This consolidated case began as two separate actions arising out of the Lease. In the first action, *Cimarex Energy Co. v. Calhoon*, Case No. CIV-11-525-D, Cimarex sought declaratory judgment that the Lease had not expired because of insufficient production. In the second action, *Calhoon v. Cimarex Energy Corp.*, Case No. CIV-11-725-D, Calhoon asserted three claims against Cimarex and QEP: (1) declaratory judgment that the Lease expired due to the failure of Defendants to yield production in paying quantities; (2) tortious breach of the duty of good faith and fair dealing; and (3) punitive damages. Cimarex and QEP then filed the Rule 12(b)(6) motion to dismiss

Calhoon's second and third claims; that motion is the subject of this Order. Cimarex and QEP assert that Calhoon failed to plead, and cannot plead, that the requisite special relationship exists between Calhoon and either Cimarex or QEP to establish a bad faith tort claim, and that absent that underlying tort, punitive damages are not available.

The two related actions were then consolidated into *Cimarex Energy Co. v. Calhoon*, Case No. CIV-11-525-D. As a result, the second action was treated as a counterclaim, with Calhoon as the counterclaimant and Cimarex Energy Co. and QEP Energy Co. as the counterclaim defendants (hereinafter "Defendants").

Calhoon has timely opposed Defendants' Rule 12(b)(6) motion, and the parties have filed reply and surreply briefs. The motion is thus fully briefed and at issue.

**Standard of Decision**

The Federal Rules of Civil Procedure provide that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A defendant may assert as a defense that the plaintiff failed "to state a claim upon which relief can be granted" if the plaintiff's complaint fails to satisfy the standard set forth in F.R.C.P. 8(a). *See* Fed. R. Civ. P. 12(b)(6).

The Tenth Circuit succinctly explained the burden a plaintiff must satisfy to survive a defendant's 12(b)(6) motion to dismiss in light of recent Supreme Court precedent:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ⸺ U.S. ⸺, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[W]e assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton,* 587 F.3d 1063, 1068 (10th Cir.2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

*Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

### Calhoon's Claims

Relevant to this motion, Calhoon alleged the following facts on the face of his pleading: (1) "As a result of the failure of the Lease to yield production in paying quantities for more than sixty (60) consecutive days, the Lease terminated under its express terms" (¶17); (2) "Calhoon has demanded that the Lease be released, but to no avail" (¶ 19); and (3) "Defendants attempted to maintain wells on the Enlow Unit that were not producing in paying quantities so that they could hold the Lease until a subsequent well could be drilled within the Subject Lands so as to avoid the cost associated with leasing the acreage within the Subject Lands, and negotiating new royalty payment provisions." (¶ 20).

Relating specifically to Calhoon's claim for tortious breach of the duty of good faith and fair dealing, he further alleged: (1) "Defendants owe Calhoon an obligation of good faith and fair dealing in the performance of its express and implied obligations under the terms of the lease, and as a royalty interest owner in the Lease" (¶ 24); (2) "Defendants breached their obligation to Calhoon of good faith and fair dealing" (¶ 25); and (3) "Defendants' actions were intentional or grossly negligent." (¶ 21).

### Defendants' Motion

Defendants seek dismissal of Calhoon's bad faith tort claims on the grounds that the Calhoon allegedly failed to state a claim upon which relief may be granted. Defendants argue that bad faith tort claims are typically limited to insurance bad faith, but Defendants acknowledge that bad faith tort liability may be extended to other instances where a plaintiff establishes there is a "special

3

relationship" between the parties similar to that which exists between an insurer and an insured.  In this case, however, Defendants assert that Calhoon has failed to, and cannot, plead the requisite special relationship, and thus the bad faith tort should not be extended to this situation.

Absent the predicate tort claim, Defendants argue that Calhoon's punitive damages claim must also be dismissed for failure to state a claim upon which relief may be granted.

## Discussion

A.  **Tortious Breach of the Duty of Good Faith and Fair Dealing**

  1.  **Bad Faith Tort Generally**

Every contract implies a duty of good faith and fair dealing.  *Wathor v. Mut. Assurance Admins., Inc.* 87 P.3d 559, 561 (Okla. 2004) ("Every contract in Oklahoma contains an implied duty of good faith and fair dealing."); *First Nat'ls Bank and Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla. 1993) ("The common law imposes this implied covenant upon all contracting parties, that neither party, because of the purposes of the contract, will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship.").

When a party to a contract breaches the duty of good faith and fair dealing, one of two remedies may be available to the injured party: breach of contract, or the independent tort of bad faith.  *See Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160 (Okla. 2010) ("Tort recovery for bad faith is one of the two remedies provided for breach of the implied duty to deal fairly and in good faith in the performance of a contract.").  Generally, the injured party's remedy is limited to breach of contract.  *Wathor*, 87 P.3d at 561 ("In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability.") (citing *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1977)).

The independent tort of bad faith, however, may be available to the injured party in limited circumstances. The tort of bad faith exists primarily to protect insureds against insurers; therefore, the tort of bad faith has been limited primarily to the insurance context. *See Combs v. Shelter Mut. Ins. Co.*, 551 F. 3d 991, 999 (10th Cir. 2008) (applying Oklahoma law) (citing *Allison v. UNUM Life Ins. Co.,* 381 F.3d 1015, 1027 (10th Cir.2004)) ("there is no dispute that the Oklahoma [badfaith] law is directed toward the insurance industry"). The special relationship between an insurer and its insured differentiates insurance contracts from ordinary commercial contracts and serves as the basis for independent tort liability. *See First Nat'ls Bank and Trust Co of Vinita*, 859 P.2d at 509 (citing *Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla. 1988)).

The special relationship between an insurer and its insured is characterized by: (1) disparate bargaining power, often evidenced by an adhesion contract[1] and (2) the non-commercial purpose for which the insured enters into the contract– namely, the elimination of risk. *See Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988). The Supreme Court of Oklahoma explained the nature of the unique relationship between an insurer and the insured in *Rodgers*:

> To some extent this special relationship and these special duties take cognizance of the great disparity in the economic situations and the bargaining abilities of the insurer and the insured. To some extent the special relationship and duties of the insurer exist in recognition of the fact that *the insured does not contract "... to obtain a commercial advantage but to protect [himself] against the risk of accidental losses*."

*Id.* (citation omitted) (emphasis in original).

---

[1] *See Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla. 1988) (quoting *Steven v. Fid. & Cas. Co. of N.Y.*, 377 P.2d 284, 297 (Cal. 1962) ("The term [adhesion contract] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement. The definitive characteristic of an adhesion contract is the weaker party has no realistic choice as to its terms.").

Although the cases mainly reference the disparity in bargaining power and the non-commercial purpose for which an insurer and insured contract as the defining attributes of the special relationship, the special relationship has also been described as "stemming from the quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to unscrupulously exert that power at a time when the insured is particularly vulnerable." *Wathor,* 87 P.3d at 561-62.

When this special relationship exists, courts have allowed for tort liability because the "breach of the implied duty to deal fairly and in good faith . . . precipitates the precise economic hardship the contract was intended to avoid." *Embry*, 247, P.3d at 1160 (citing *Christian v. Am. Home Assurance Co.,* 577 P.2d 899) (Okla. 1977)).

Oklahoma courts have been reluctant to extend the bad faith tort beyond the insurance context. *See Embry*, 247 P.3d at 1160; *First Nat'ls Bank and Trust Co. of Vinita*, 859 P.2d 502 (refusing to extend claims for bad faith to banking relationships). This reluctance is motivated in part by the concern that the threat of tort liability may chill commercial transactions. *See Rodgers*, 756 P.2d at 1227 ("To impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions."). When, however, a special relationship similar to that between an insurer and an insured exists, courts have extended the tort of bad faith beyond the insurance context. *See Embry*, 247 P.3d at 1160.

    **2.**    **This Court has consistently refused to extend tortious breach of the duty of good faith and fair dealing to cases similar to the case at bar.**

Mineral interest owners (plaintiffs) in *McKnight v. Linn Operating, Inc*, Case No. CIV-10-30-R (W.D. Okla. April 1, 2010), filed suit against a lessee/operator, alleging the defendant improperly and unreasonably deducted production and post-production costs from the value of the

royalty the defendant owed the plaintiffs. Among other claims, the plaintiffs alleged tortious breach of the implied duty of good faith and fair dealing. The plaintiffs, on the face of their complaint, alleged the existence of a special relationship predicated on the disparity between the parties as to bargaining and economic power, knowledge and experience, and access to information.

The defendant filed, and Judge Russell granted, a Rule 12(b)(6) motion to dismiss the plaintiffs' claim for tortious breach of the implied duty of good faith and fair dealing. *See McKnight*, Order at 11-12. Judge Russell considered the impact of *Beshara v. Southern Nat'l Bank*, 928 P.2d 280 (Okla. 1996), and he also noted that the relationship between royalty owners and operators has been described as "special." Judge Russell, however, concluded that "the nature of the relationship is not akin to that of an insured and insurer," and accordingly dismissed plaintiffs' tortious breach claim. *Id.* Order at 10-12. Judge Russell then dismissed the plaintiffs' corresponding punitive damages claim to the extent that the punitive damages claim relied on the tortious breach of the implied duty of good faith and fair dealing claim as the requisite underlying tort claim.[2]

Chief Judge Miles-LaGrange similarly granted a defendant's Rule 12(b)(6) motion to dismiss a plaintiff's claim for tortious breach of the duty of good faith and fair dealing in *Morrison v. Anadarko Petroleum Corp.*, Case No. CIV-10-135-M, 2010 WL 2721397, at *5 (W.D. Okla. July 6, 2010). Just as in *McKnight*, the plaintiff alleged the defendant improperly and unreasonably deducted production and post-production costs from the value of the royalty the defendant owed the plaintiff. *Id.* at *1. In dismissing the plaintiff's claim, Chief Judge Miles-LaGrange quoted from

---

[2] Judge Russell dismissed all of the plaintiffs' tort claims except their breach of fiduciary duty claim regarding wells subject to unitization orders. Thus, Judge Russell dismissed the plaintiffs' punitive damages claim except to the extent that the punitive damages claim could be supported if the plaintiffs could establish their breach of fiduciary duty claim. *Id.*, Order at 12.

and adopted the rationale of Judge Russell in *McKnight*. *Id*. at \*3-4 ("Having reviewed Judge Russell's Order, the Court finds this Order persuasive, and as a result, adopts his findings as its own.").

### 3. Plaintiff has failed to state a claim for which relief may be granted with respect to Plaintiff's claim for breach of the duty of good faith and fair dealing.

Calhoon failed to allege any facts regarding the existence of a special relationship that could possibly support an extension of a claim of tortious breach of the duty of good faith and fair dealing beyond the insurance context. Calhoon alleged no facts suggesting a disparity in bargaining power between the lessor and lessees of the Lease, or that the purpose of the Lease was other than to advance the commercial interests of the parties.

Beyond the failure of Calhoon to allege these facts in his Complaint, such facts, even if alleged, are insufficient to establish the type of special relationship that exists between an insurer and its insured. *See generally McKnight v. Linn Operating, Inc*, Case No. Civ-10-30-R (W.D. Okla. April 1, 2010); *Morrison v. Anadarko Petroleum Corp.*, Case No. CIV-10-135-M, 2010 WL 2721397 at \*5 (W.D. Okla. July 6, 2010). Defendants' arguments in this respect are persuasive. The purpose of an oil and gas lease is to seek commercial advantage and take associated commercial risks; the purpose is not the elimination of risk as is the purpose of an insurance contract. Since the purpose of the oil and gas lease is primarily to seek commercial advantage, the Court does not reach the issue of whether such a lease involves sufficiently disparate bargaining power to satisfy the second criteria of the "special relationship."

Because the relationship that exists between Calhoon and Defendants does not constitute the type of "special relationship" required to extend the tort of bad faith beyond the insurance context,

Calhoon's claim for tortious breach of the duty of good faith and fair dealing is dismissed with prejudice.  *See Cohlmia v. Ardent Health Services, LLC*, 448 F. Supp. 2d 1253, 1262 (N.D. Okla. 2006) (citing *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001)) (explaining that when "the plaintiff clearly cannot prevail on the facts alleged, and amending the complaint would be futile, dismissal with prejudice may be appropriate").

**B.     Punitive Damages.**

Punitive damages are not recoverable for a breach of contract.  *See* 23 Okla. Stat. §9.1.  Discussing the availability of punitive damages in the context of a breach of the duty of good faith and fair dealing, the Tenth Circuit explained: "In the '*proper* case,' however, 'punitive ... damages *may* be sought.'  The 'proper case' requires that a 'special relationship' exist between the parties." *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008) (applying Oklahoma law) (citations omitted).

Since Calhoon has failed to establish a "special relationship" between the lessor and lessee, and cannot establish such a relationship here, this is not a proper case in which punitive damages may be sought.  Further, since Calhoon has failed to state a claim for tortious breach of the duty of good faith and fair dealing, there is no remaining tort alleged that may support the award of punitive damages.

**Conclusion**

Defendants are entitled to dismissal under Rule 12(b)(6), for failure to state a claim upon which relief can be granted, of Calhoon's claim for tortious breach of the duty of good faith and fair dealing and his related claim for punitive damages.

IT IS THEREFORE ORDERED that Defendants' 12(b)(6) motion to dismiss is GRANTED, and Calhoon's claim for breach of the duty of good faith and fair dealing is DISMISSED with prejudice to refiling.

IT IS SO ORDERED this 19th day of April, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE